UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY A. TWAROZEK,

                              Plaintiff,

              v.                                          **DECISION AND ORDER**
                                                          09-CV-731S
MIDPOINT RESOLUTION GROUP, LLC,

                              Defendant.

## I.  INTRODUCTION

On August 20, 2009, Plaintiff filed a complaint alleging various violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.  Defendant failed to

appear and defend this action, which resulted in the Clerk of the Court entering default on

January 25, 2010.  Presently before this Court is Plaintiff's Motion for Default Judgment

pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[1]   For the following

reasons, Plaintiff's motion is granted.

## II.  BACKGROUND

Plaintiff Mary A. Twarozek incurred a credit card debt to Union-Plus Credit Card.

(Complaint, Docket No. 1, ¶ 9.)  After Twarozek failed to pay the debt, Union-Plus Credit

Card employed Defendant Midpoint Resolution Group, LLC ("Midpoint") to collect it.

(Complaint, ¶ 12.)  Midpoint is a "debt collector" within the meaning of the FDCPA.  (Id. at

¶ 5.)

---

[1] The submissions relating to this motion are filed at docket numbers 9 and 15.

In November 2008, Twarozek called Midpoint and spoke to an agent, who asked her to pay $1,000 to settle her debt.  (Id. at ¶ 13.)  Twarozek subsequently gave Midpoint a check for that amount, but later put a stop on the check.  (Id.)  On December 3, 2008, the agent called Twarozek's home.  (Id. at ¶ 14.)  As the agent began leaving a message on Twarozek's telephone answering machine—explaining that she was "calling from the credit card" and "had a problem"—Twarozek's daughter answered the telephone.  (Id.)  The agent then spoke with Twarozek's daughter and disclosed that Twarozek owed a debt and had written a bad check.  (Id.)  The agent "continued to harass" Twarozek's daughter, and threatened legal action if Twarozek did not return Midpoint's call that day.  (Id.)  Twarozek's daughter called her mother at work that same day to relay the details of the conversation, which allegedly caused Twarozek to become very upset.  (Id. at ¶ 15.)

Upon returning home from work on December 3, 2008, Twarozek called Midpoint and spoke with the same agent.  (Id. at ¶ 16.)  The agent demanded payment of $300 from Twarozek.  (Id.)  When Twarozek complained about the agent's communication with her daughter, the agent stated that she had not disclosed any private information and, further, that the conversation had been recorded and would be turned over to Twarozek if she paid the $1,000 debt settlement.  (Id. at ¶¶ 16, 17.)  Twarozek also spoke with a manager at Midpoint that day, who reiterated that the agent's conversation with her daughter had been recorded and that no private information had been disclosed.  (Id. at ¶ 17.)  Although Midpoint told Twarozek that a recording of the conversation would be e-mailed to her, Twarozek maintains that she never received the recording.  (Id.)  As a result of Midpoint's actions, Twarozek claims to have suffered actual damages, including becoming nervous, upset, and anxious, and suffering from emotional distress.  (Id. at ¶ 18.)

2

## III. DISCUSSION

**A.    Default Judgment Standard**

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See FED. R. CIV. P. 55(a).  Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment.  Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment.  See FED. R. CIV. P. 55(b)(2).  Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  All reasonable inferences from the evidence presented are drawn in the moving party's favor.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

**B.    Liability**

 **1.    Claims under 15 U.S.C. §§ 1692b(1), 1692b(2), and 1692c(b)**

Section 1692b limits a debt collector's contact with third parties to acquiring location information.  The debt collector must identify himself, disclose that he is calling to confirm the consumer's location information, and, only if expressly asked, identify his employer.

<u>See</u> 15 U.S.C. § 1692b(1).  This section further prevents a debt collector from revealing that the consumer owes a debt.  <u>See</u> 15 U.S.C. § 1692b(2).  And except as provided in § 1692b, § 1692c(b) limits the individuals a debt collector may contact to the consumer, her attorney, a consumer reporting agency, the creditor, the creditor's attorney, and the debt collector's attorney.

Twarozek alleges that Midpoint violated 15 U.S.C. §§ 1692b(1), 1692b(2), and 1692c(b) by communicating with her daughter, failing to limit the communication to confirming or correcting Twarozek's location information, and disclosing that Twarozek owed a debt.  (Complaint, ¶ 20(A).)  Based on the undisputed facts taken as true, this Court finds violations of §§ 1692b(1), 1692b(2), and 1692c(b) as alleged.

**2.      Claims under 15 U.S.C. §§ 1692d, 1692d(2), 1692e(10), and 1692e(11)**

Section 1692d makes it generally unlawful for a debt collector to engage in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  As a specific example, the statute prohibits the use of obscene, profane, or abusive language.  <u>See</u> 15 U.S.C. §§ 1692d(2).

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt.  The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;
> . . .

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
>
> . . .

Twarozek alleges that Midpoint violated 15 U.S.C. §§ 1692d, 1692d(2), 1692e(10), and 1692e(11) by calling her home and "harass[ing]" her daughter by "questioning her about her mother," and, further, by falsely representing itself as a credit card company in its aborted message on Twarozek's telephone answering machine.  (Complaint, ¶¶ 14, 20(B).)  Based on the undisputed facts taken as true, this Court finds that, but for § 1692d(2), Midpoint violated these sections as alleged.

Section 1692d(2) is meant to deter offensive language such as name-calling, racial or ethnic slurs, or other similarly offensive derogatory remarks.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985).  Here, Twarozek does not allege any specific statements made by Midpoint that would qualify as obscene, profane, or abusive language.  Thus, Twarozek fails to establish a violation of § 1692d(2).

**3.      Claims under 15 U.S.C. §§ 1692e, 1692e(4), 1692e(5), 1692e (7), and 1692e(10)**

As this Court has noted, Section 1692e makes it generally unlawful for a debt collector to use "any false, deceptive, or misleading representation to collect a debt."  The statute provides as follows:

> A  debt  collector  may  not  use  any  false,  deceptive,  or

5

misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . .

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action;
. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken;
. . .

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer;
. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;
. . .

Twarozek alleges that Midpoint violated 15 U.S.C. §§ 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10) by threatening to commence legal proceedings if Twarozek did not return Midpoint's call the same day, and by falsely representing that Twarozek had committed the crime of writing a bad check.  (Complaint, ¶¶ 14, 20(C)–(D).)  Based on the undisputed facts taken as true, this Court finds that Defendant violated 15 U.S.C. §§ 1692e(7) and 1692e(10), as alleged.  With regard to the alleged violations of 15 U.S.C. §§ 1692e(4) and 1692e(5), Plaintiff bears the burden of proving Defendant's intent.  Tsenes v. Trans-Continental Credit & Collection Corp., 892 F. Supp. 461, 465 (E.D.N.Y. 1995). Because the complaint does not contain allegations that Midpoint would not or did not

6

commence legal proceedings against Twarozek, Twarozek does not meet her burden to support claims under §§ 1692e(4) or 1692e(5).

## C.   Damages

### 1.   Statutory Damages

Section 1692k(a)(2)(A) of Title 15 authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA.  The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion.  See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998).  Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, and the extent to which the debt collector's noncompliance was intentional.  See 15 U.S.C. § 1692k(b)(1).

Here, Twarozek requests the statutory maximum of $1,000 in damages, which is excessive.  Twarozek alleges that three calls transpired between Midpoint and herself or her daughter over a two-month period in 2008, however, Midpoint initiated only one of those three calls.  (Complaint, ¶¶ 13–17.)  Midpoint is deemed to have admitted improperly communicating with a third party about Twarozek and making multiple false representations to Twarozek and a third party.  Although these acts violate the FDCPA, they are not so persistent or egregious as to warrant the statutory maximum penalty. Given these circumstances, Twarozek will be awarded $250 in statutory damages, pursuant to § 1692k(a)(2)(A).  See Estay v. Moren & Woods, LLC, No. 09-CV-620A, 2009 WL 5171881 at *2 (W.D.N.Y. Dec. 22, 2009) (awarding plaintiff $250 in statutory damages where defendant made harassing calls on more than one occasion, made empty threats

of litigation, and improperly disclosed information about the consumer's debt to a third party); Fontana v. C. Barry & Assocs., No. 06-CV-359A, 2007 WL 2580490 (W.D.N.Y. Sept. 4, 2007) (awarding plaintiff $250 in statutory damages where defendant's conduct was not frequent or persistent, but included improperly notifying plaintiff's family members of the debt); Annis v. E. Asset Mgmt., LLC, No. 08-CV-458S, 2010 WL 1035273, at *5 (W.D.N.Y. Mar. 18, 2010) (awarding $1,000 in statutory damages where defendant's violations of the FDCPA included four months of calling plaintiff almost daily, threatening unintended litigation, and targeting both the plaintiff and her family).

**2.    Actual Damages**

Section 1692k(a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]."  Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA."  See Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *3 (W.D.N.Y. January 22, 2010) (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).

Twarozek requests an award of $2,500.00 in actual damages, based on her claims of humiliation at work and in front of her daughter.  In her declaration, Twarozek describes her experience in this manner:

> When my daughter called me at work, I was on a bus with handicapped children that I was supervising.  The call upset me tremendously.  My daughter did not know of our financial difficulties and I was embarrassed.  I was also upset at the threats that the Defendant had made.  I began crying.  A

> coworker came to me and asked me what was upsetting me.
> I found it humiliating that my coworkers and the children saw
> me crying about my personal financial situation . . . . I was very
> nervous about possibly getting sued, and had difficulty
> sleeping for approximately a week.  I was embarrassed to see
> my daughter for a period of time.  She actually offered to help
> us financially, which I found humiliating.

(Declaration of Mary A. Twarozek, Docket No. 15-1, ¶ 11.)

Twarozek describes the effect that her interaction with Midpoint had on her as
follows:

> I was very nervous about possibly getting sued, and had
> difficulty sleeping for approximately a week.  I was
> embarrassed to see my daughter for a period of time.  She
> actually offered to help us financially, which I found humiliating.

(Declaration of Mary A. Twarozek, ¶ 13.)

Twarozek's daughter also submitted a declaration with a similar description of the
effects of this experience on Twarozek, based on her observation.  (Declaration of Jennifer
Twarozek, Docket No. 15-2, ¶ 4.)  Twarozek has not submitted any medical evidence in
support of her claims of emotional distress.

Some stress associated with Midpoint's conduct in this case is to be expected, and
the degree of distress and humiliation described in Twarozek's declaration strikes this
Court as consistent with the conduct that Midpoint is deemed to have engaged in.  Further,
this Court notes that Midpoint did not actually call Twarozek at work; although Midpoint
demanded that Twarozek return its call that day, it was Twarozek's daughter who
contacted Twarozek at work, leading to the humiliation that Twarozek describes in her
declaration.  Thus, in this Court's view, actual damages of $500 for Plaintiff is fair and
appropriate compensation.  See Coles v. Lieberman, Michaels & Kelly, LLC, No. 10-CV-

484S, 2011 WL 3176467, at *3 (July 27, 2011) (awarding plaintiff $500 in actual damages where defendant's conduct included five calls to plaintiff over two months, causing her to experience fear and mental distress); Pearce v. Ethical Asset Mgmt. Inc., No. 07-CV-718S, 2010 WL 932597, at *5 (Mar. 11, 2010) (awarding plaintiff $750 in actual damages where defendant's conduct caused plaintiff to experience embarrassment in front of family members and mental distress that lasted several months).

### D.    Attorney's Fees and Costs

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants.  See 15 U.S.C. § 1692k(a)(3) (permitting recovery of, "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,[2] the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts.  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).  In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc.[3] (which considered twelve specific factors to arrive at the "reasonable fee").  Arbor Hill, 493 F.3d at 114.  "Relying on the substance of both

---

[2] 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).

[3] 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by* Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'"  Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables that the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee."  Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted).  After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively."  493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717–19.

Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from

being associated with the case.  Arbor Hill, 493 F.3d at 118.

This method of reasonable fee calculation has been used in this district to determine appropriate fees in FDCPA cases.  See, e.g., Robbins v. Viking Recovery Servs. LLC, No. 09-CV-1030A, 2010 WL 1840318, at *3–4 (W.D.N.Y. May 7, 2010); Mostiller, 2010 WL 335023, at *4–5; Estay, 2009 WL 5171881, at *3–4.

Here, Twarozek's attorney, Kenneth R. Hiller, has submitted an affirmation and detailed time records supporting his request for $4,226.00 in attorney's fees and expenses. Hiller claims 15.9 hours at $240 per hour.  (Affirmation of Kenneth R. Hiller; Docket 15-3, ¶ 7.)  Plaintiff also seeks recovery of the $350 filing and $60 process-service fees.  (Id.)

The time expended for prosecution of this case appears reasonable, however, the hourly rate claimed is excessive.  An hourly rate of $215 for Hiller has been approved in this district as a reasonable hourly rate for counsel of his experience.  See Annis, 2010 WL 1035273, at *7 (compensating Hiller at $215 per hour); Mostiller, 2010 WL 335023, at *5; Miller v. Midpoint Resolution Group, LLC, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009).

Accordingly, this Court awards $3,418.50 for Hiller's 15.9 hours at $215 per hour. Further, this Court finds reimbursement of the $350 filing and $60 process-service fees to be proper.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted. Plaintiff is awarded $250 in statutory damages, $500 in actual damages, $3,418.50 in attorney's fees, and $410 in costs, for a total award of $4,578.50.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter judgment in favor of Plaintiff against Defendant in the amount of $4,578.50, with apportionment consistent with the foregoing decision.

FURTHER, that the Clerk of the Court shall close this case upon entry of judgment.

SO ORDERED.

Dated:          August 4, 2011
                Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                          Chief Judge
                                     United States District Court